# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| MAUREEN DANGELO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:09-cv-383 |
| | ) | |
| ROGERS ENTERPRISES, | ) | |
| INC., d/b/a ROGERS | ) | |
| & HOLLANDS JEWELERS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) Defendant's Motion for Summary Judgment, filed by Defendant, Rogers Enterprises, Inc., on February 18, 2011 (DE #15); and (2) Defendant Rogers Enterprises, Inc.'s Motion for Summary Ruling Under Local Rule 7.1(a), filed by Defendant, Rogers Enterprises, Inc., on April 19, 2011 (DE #21). For the reasons set forth below, the motion for a summary ruling (DE #21) is **GRANTED**. Additionally, the motion for summary judgment (DE #15) is **GRANTED**. The Clerk is hereby **ORDERED** to **DISMISS** the claims against Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers **WITH PREJUDICE** and to **CLOSE** this case.

BACKGROUND

Defendant filed the instant motion for summary judgment on February 18, 2011. Under Local Rule 56.1(a) and Federal Rule of

Civil Procedure Rule 6, Dangelo's response was due on March 21, 2011. On March 20, 2011 (one day before the deadline), Dangelo's counsel file a motion for extension of time to file a response, requesting that the date be extended until April 10, 2011. (DE #17.) Counsel claimed she fell down the back steps of the Hammond City Courthouse on March 9, 2011, and sustained two fractures and a sprain. (DE #17.) This Court granted the request and extended the response deadline to April 10, 2011. (DE #18.) On April 10, 2011 (the date her response was due), Dangelo's counsel filed another motion asking the Court to extend the deadline for the response to April 18, 2011 (DE #19). This time, Dangelo's counsel claimed she "contracted pneumonia and ha[d] been unable to complete Plaintiff's Response." (DE #19.) The Court once again granted the request for an extension, but this time stated in its order that "Plaintiff is **WARNED** that no more extensions shall be granted." (DE # 20, emphasis in original.) Plaintiff failed to file a response by April 18, 2011. In fact, to this date, Plaintiff has not filed a response.

Local Rule 7.1(a) provides that, in the case of summary judgment, a party's "[f]ailure to file a response or reply within the time prescribed may subject the motion to summary ruling." Plaintiff's counsel failed to file her response by the required deadline, despite having twice asked for, and received, lenient extensions by this Court. In its last order, this Court

specifically warned Plaintiff that no more extensions would be granted. Thus, a summary ruling is appropriate. However, "[s]trict enforcement of [local rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted" and this Court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.

*Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also*

*Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993).
Therefore, if a party fails to establish the existence of an
essential element on which the party bears the burden of proof at
trial, summary judgment will be appropriate. In this situation,
there can be "'no genuine issue as to any material fact,' since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial." *Celotex*, 477 U.S. at 323.

Undisputed Facts

Plaintiff, Maureen Dangelo, began working for Defendant,
Rogers Enterprises, Inc. ("Rogers") in May 10, 2002. She was hired
at Rogers' Southlake, Indiana store, as a Sales Associate. As a
Sales Associate, her main duty was to provide customer service,
working behind glass-enclosed cases of jewelry. (Reynolds Dec'l ¶
5.) That duty required her to stand and interact with customers.
*Id.* In May 2003, Dangelo accepted a transfer from the Southlake
store to a store in River Oaks, Illinois, where she continued to
work as a Sales Associate full-time (approximately 40 hours per
week). (Dangelo Dep., pp. 24-26.) Dangelo met her sales goals,
and received several pay increases over the years. (Dangelo Dep.,
pp. 23, 27.) Eventually, Kassie Henry became Dangelo's supervisor
at the River Oaks store. (*Id.*, pp. 26-27.)

In early 2005, Dangelo heard that there may be open positions in Supply and Reception at Rogers' Home Office, and she heard they would not be as physically demanding as her Sales Associate position, which appealed to her. (Dangelo Dep., pp. 35-37.) She sent her resume to Suzanne Kozik, seeking a position at the Home Office. (Dangelo Dep., p. 35; Ex. 5 to Dangelo Dep.) She was not specific about which job she wanted, but said she wanted a more "sedentary" position because she felt pain "when [she] was on her feet for long periods of time." (Dangelo Dep., pp. 92-93.) Kozik hired Dangelo for the Supply Purchasing Coordinator position in reliance on Dangelo's commitment to obtain computer training. (Kozik Dec'l ¶¶ 5-6.) She started working at that position on April 11, 2005, and was 57 years old at that time. (Dangelo Dep. Pp. 28, 8.) Dangelo did not ask about the Receptionist position, which was then being filled by a temporary worker, Sabrina Thomas, because Dangelo thought the Supply Purchasing Coordinator job "would be more stimulating." (Dangelo Dep., pp. 38, 40; Reynolds Dec'l ¶ 6.)

Despite her promise, Dangelo never enrolled in a computer class. (Dangelo Dep., pp. 41-42.) The Supply Purchasing Coordinator works with vendors to purchase supplies and merchandise that Rogers needs to operate its business. (Kozik Dec'l ¶ 7.) Dangelo admits that she had difficulty with the computer portions of the job, which she was "unfamiliar with." (Dangelo Dep., pp.

42-43.) She also concedes that she "didn't know how to do things on the computer." (Dangelo Dep., p. 43.) Because Dangelo could not perform some of her duties, Kozik assumed some of them herself. (Dangelo Dep., pp. 44-45; Kozik Dec'l ¶ 8.) Kozik spent several days training Dangelo on the computer, but could not do more because she had her own job duties. (Dangelo Dep., p. 42.)

On May 18, 2005, Kozik received an e-mail from a long-term vendor, complaining about how Dangelo had handled an order, and the tone Dangelo had used with one of the vendor's employees. (Kozik Dec'l ¶ 9; Ex. A to Kozik Dec'l.) This complaint from a vendor supported Kozik's conclusion that Dangelo could not perform the job. (Kozik Dec'l ¶ 11.) About 7 weeks after Dangelo had worked at the Supply Purchasing Coordinator position, Kozik met with her to tell her the situation was not working. According to Dangelo, Kozik apologized for not having enough time to spend training her, but explained that Rogers needed "somebody in the position that could do it now." (Dangelo Dep., pp. 45-46.)

During that same meeting, Dangelo asked Kozik whether the Receptionist position was still available, and Kozik said she would investigate. (Dangelo Dep., pp. 46-47.) Thomas, who is African-American, had started working as the Receptionist as a temporary employee in November 2004. (Reynolds Dec'l ¶ 6.) The Receptionist position involved certain computer duties, such as scheduling

meetings and other office tasks. (Kozik Dec'l ¶ 14.) Thomas was converted to a regular employee, and hired for the Receptionist position on a full-time basis on May 18, 2005. Rogers hired her because she proved during the previous six months that she was capable of performing the tasks to complete the job, including the computer tasks. (Kozik Dec'l ¶ 15.) Kozik told Dangelo the Receptionist position was unavailable, because it had been filled. (Dangelo Dep., p. 47.) Kozik then arranged for Dangelo to interview for a Quality Control position at the Home Office. However, Dangelo did not receive the position because it required computer skills she did not have. (Dangelo Dep., p. 50.)

On June 7, 2005, Debbie Reynolds, Rogers' Human Resources Director, met with Dangelo to discuss her options. Reynolds told her there were no available positions in the Home Office that fit Dangelo's qualifications, but that Dangelo could return to work in her previous position as Sales Associate. (Reynolds Dec'l ¶ 10.) Reynolds also told Dangelo that she could think about the offer, but if she did not accept, Rogers would pay her through the end of the week and terminate her employment. *Id.* Dangelo told Rogers she did not want to return working as a Sales Associate. Dangelo said she did not think she would be allowed to sit while working; however, Dangelo admits she never actually asked anyone at Rogers whether she would be permitted to sit if she returned to work as a

Sales Associate.  (Reynolds Dec'l ¶ 11; Dangelo Dep., pp. 50-51; Ex. 6, 8 to Dangelo Dep.)

Because Dangelo chose not to return to work as a Sales Associate, and there were no other available positions at the Home Office that fit Dangelo's qualifications, Reynolds decided to terminate her employment effective June 11, 2005.  (Reynolds Dec'l ¶¶ 10-11; Ex. 8 to Dangelo Dep.)  Henry, Dangelo's former supervisor at the River Oaks Store, was not involved in the decision to terminate her employment.  (Reynolds Dec'l ¶ 13; Kozik Dec'l ¶ 16.)

During her employment at Rogers, Dangelo had arthritis and a sciatic nerve condition, which limited her as follows: she could only be on her feet for "two hours or so" before she needed to sit; she could not lift "heavy things," which she described as more than 15 pounds; and her pain interrupted her sleep and impacted her general "mobility."  (Dangelo Dep., pp. 68-71, 73.)  Dangelo had 2 doctors' notes.  One from Dr. Hecht dated September 23, 2004, pertaining to Dangelo's right knee which states: "Work only 8 hour days + 40 hours per week.  Able to sit when needed."  (Dangelo Dep., p. 30; Ex. 3 to Dangelo Dep.)  The second note, from Dr. Djurovic, dated June 9, 2005 (2 days after Reynolds offered Dangelo the opportunity to return to work as a Sales Associate), states "[a]dvised sedentary job; to avoid standing more than ½ hour" and

indicates that advice had been in place since 12/29/03. (Dangelo Dep., pp. 33-34; Ex. 4 to Dangelo Dep.) Dangelo claims she provided the note from Dr. Hecht to Henry (her supervisor in the River Oaks store). However, Reynolds did not see the note from either Dr. Hecht or Dr. Djurovic before making the decision to terminate Dangelo's employment. (Dangelo Dep, p. 31; Exs. 3 & 4 to Dangelo Dep.; Reynolds Dec'l ¶ 14.)

Dangelo's disability claim is based on her assertion that Henry did not let her sit when she worked at the River Oaks store. Dangelo also believes she was not given the Receptionist position because of her disability, but admitted during the deposition that this is merely her belief. (Dangelo Dep., pp. 63-65.) Her age discrimination claim is based on Dangelo's assertion that sometime after she started working as the Supply Purchasing Coordinator, Kozik asked her how old she was and said, "well, you look marvelous darling [,] [y]ou would never know it," then added, "I think this job is just too much for you." (Dangelo Dep., pp. 53-54.) Dangelo also claims that Henry (her supervisor when she was a Sales Associate at River Oaks), made a comment during a sales meeting to other employees, saying, "you're letting this old lady beat you out." (Dangelo Dep., p. 99.) However, Dangelo thinks this comment was made humorously and did not report it to anyone at Rogers. (Dangelo Dep., pp. 99, 105-107.) Reynolds did not know Dangelo's exact age when she made the decision to terminate her employment.

(Reynolds Dec'l ¶ 12.)  Dangelo's race discrimination claim is based on the fact that Thomas, who is African American, was hired for the Receptionist position.  (Dangelo Dep., pp. 58-61.)  Dangelo is Caucasian.

ADA

First, the Court notes that Congress amended the Americans with Disabilities Act ("ADA"), effective January 1, 2009, to broaden the class of individuals who qualify as "disabled" under the statute.  Pub. L. No. 110-325, 112 Stat. 3553.  Because the alleged discriminatory actions occurred in 2005, the ADA Amendments do not apply to Dangelo's claims.  *See, e.g., Winsely v. Cook County*, 563 F.3d 598, 600 n. 1 (7th Cir. 2009) (amendments to ADA have been ruled as not retroactive); *Fredricksen v. United Parcel Serv. Co.*, 581 F.3d 516, 521 n. 1 (7th Cir. 2009) ("Congress did not express its intent for these changes [to the ADA] to apply retroactively, and so we look to the law in place prior to the amendments.").

To establish a claim of discrimination under the ADA, Dangelo must demonstrate that: (1) she was disabled under the ADA; (2) her work performance met Rogers' legitimate expectations; (3) she was terminated; and (4) the circumstances surrounding her termination indicate that it is more likely than not that her disability was the reason for the termination.  *See Patterson v. Chicago Ass'n For*

11

*Retarded Citizens*, 150 F.3d 719, 725 (7th Cir. 1998). A plaintiff seeking to avoid summary judgment on an ADA claim "must demonstrate that there is at least a genuine issue of material fact as to whether [s]he is disabled, whether [s]he can perform the essential functions of the position, and whether [s]he has suffered an adverse employment action because of [her] disability." *Kupstas v. City of Greenwood,* 398 F.3d 609, 611 (7th Cir. 2005).

Turning first to the issue of whether Dangelo is considered "disabled" under the 1990 ADA, she must show that there is a genuine issue of material fact as to whether she possessed any of the following: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (current version at 42 U.S.C. § 12102(1)); *see, e.g., Cassimy v. Bd. of Ed. Of Rockford Pub. Schs. Dist. #205*, 461 F.3d 932, 935-36 (7th Cir. 2006) (ruling Court should first make threshold determination of whether the plaintiff is disabled under the ADA). Here, Dangelo has attempted to state a claim under subsection (A) (she has an actual disability), or alternatively, subsection (C), that Rogers regarded her as having an impairment. (Compl. ¶ 20.)

To prove that she had an actual disability qualified under the ADA, Dangelo must show she had a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C.

§ 12102(d). To be substantially limited in general, a person must be "either unable to perform a major life function, or [be] significantly restricted in the duration, manner, or condition under which the [person] can perform a particular major life activity, as compared to the average person in the general population." *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001). Taking the evidence in the light most favorable to Dangelo, the Court finds she is not substantially limited by her arthritis and sciatic nerve condition.

The first doctor's note, from Dr. Hecht, merely states: "Work only 8 hour days + 40 hours per week. Able to sit when needed." (Ex. 3 to Dangelo Dep.) However, the inability to work more than 40 hours per week does not substantially limit a major life activity. *See, e.g., Anderson v. Inland Paperboard and Packaging, Inc.*, 11 Fed. Appx. 432, 436-37 (6th Cir. 2001) (finding inability to work more than eight hours a day was not enough to classify plaintiff as disabled under the ADA).

Dangelo herself claims that she needed to sit down after being on her feet for "two hours or so" (Dangelo Dep., pp. 68-71), and the second doctor's note, which indicates it had been in place since December 29, 2003, states only that Dangelo should "avoid standing more than ½ hour." (Ex. 4 to Dangelo Dep.) The note fails to indicate the actual condition Dangelo is allegedly suffering from, or the severity of the condition. Moreover, the

Seventh Circuit has directly addressed a similar set of facts, and found the individual was not disabled under the ADA. In *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 311 (7th Cir. 2007), the plaintiff claimed he was disabled under the ADA because he was unable to stand for more than thirty to forty minutes at a time without briefly sitting or lying down, and he was unable to balance on one leg. The Seventh Circuit affirmed the district court's granting of summary judgment, finding "that thirty to forty minutes is not a very brief period, [and] we find that [plaintiff's] inability to stand for longer periods does not constitute a substantial limitation on the major life activity of standing." *Id.* at 312 (quotation omitted). Similarly, this Court finds that Dangelo's inability to stand for more than ½ hour does not rise to the level of a substantial limitation on the major life activity of standing. *See also Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 644-45 (2d Cir. 1998) (reversing jury determination that police officer who could "maybe" stand for "half an hour to an hour at a time" was disabled).

To the extent Dangelo is claiming she is disabled because she could not lift heavy objects more than 15 pounds (Dangelo Dep., p. 73), this also does not rise to the level of impairment required by the ADA. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (holding nurse unable to lift more than 10 pounds per day was not substantially limited in the major life activity of

14

working); *Bochenek v. Walgreen Co.*, 18 F.Supp.2d 965, 970 (N.D. Ind. 1998) (holding plaintiff who had difficulty standing and doing "heavy lifting" not substantially limited by knee problems within meaning of the ADA).

Dangelo also claims that Rogers regarded her as disabled. Regardless of what subsection Dangelo is proceeding under, "concepts of 'substantially limits' and 'major life activity' are the same whether the employee is proceeding under a claim that she is actually disabled or regarded as disabled." *Mack v. Great Dane Trailers*, 308 F.3d 776, 781–82 (7th Cir. 2002). In this case, we have already ruled that Dangelo did not actually have an impairment that substantially limited a major life activity. Thus, to prevail, Dangelo must either prove: (1) that Rogers mistakenly believed she had an impairment that substantially limited a major life activity; or (2) that Rogers mistakenly believed that an existing impairment that is not really limiting does substantially limit a major life activity. *Cassimy*, 461 F.3d at 937. Dangelo concedes that she does not know if Rogers considered her to be disabled. (Dangelo Dep., p. 95.) This speculation is not sufficient. *See Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999) (emphasis in original) "[plaintiff's] speculation about what [the employer] *might* have believed does not create a genuine issue of fact" because a "plaintiff's speculation is not a sufficient defense to a summary judgment motion.").

There are no facts in the record showing that Rogers actually believed she had an impairment substantially limiting a major life activity. When Dangelo contacted Kozik about a job in the Home Office, she indicated she wanted a more "sedentary" position because she felt pain "when [she] was on her feet for long periods of time." (Dangelo Dep., pp. 92-93.) Yet, Dangelo was still hired for the Supply Purchasing Coordinator position. Moreover, after the Supply Purchasing Coordinator position did not work out, Reynolds offered Dangelo her old job (working as a retail Sales Associate) back – which suggests that Reynolds did not regard Dangelo's condition as one that substantially limited a major life activity. *See, e.g., Tockes v. Air-Land Transp. Servs., Inc.*, 343 F.3d 895, 896 (7th Cir. 2003) (finding fact that employer hired plaintiff to do work requiring him to use the hand he claimed was "disabled" supported summary judgment for employer on plaintiff's "regarded as" claim). At best, the facts show that Kozik or Reynolds was aware of Dangelo's impairment, which "is not the same thing as a belief that the condition is substantially impairing." *Cassimy*, 461 F.3d at 937; *see also Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001). Thus, Dangelo's "regarded as" claim also fails as a matter of law.

Finally, even assuming, *arguendo*, that Dangelo could establish that she was disabled, she has still failed to establish a prima facie case under the ADA because she can not show that she was

meeting Rogers' legitimate performance expectations at the time of her termination.  *See Squibb*, 497 F.3d at 788 (noting "we must examine [the plaintiff's] performance at the time of the challenged adverse actions."); *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (plaintiff must show he was meeting employer's expectations at the time of his termination, and it was irrelevant if he had met them in the past).  Dangelo admits that Kozik explained during her interview that the Supply Purchasing Coordinator position required computer skills, and she told Kozik she would take a computer class.  (Dangelo Dep., pp. 39, 41.) However, she never took the class, Dangelo had difficulty with the computer parts of the job which she was "unfamiliar with," and acknowledges she "didn't know how to do things on the computer." (Dangelo Dep., pp. 42-43.)  Moreover, Rogers received a complaint from an outside vendor regarding Dangelo's conduct.  (Kozik Dec'l ¶ 9; Ex. A to Kozik Dec'l.)  Clearly, Dangelo was not meeting Rogers' legitimate job expectations when she was terminated.  It was expected that Dangelo be able to handle certain computer skills as Supply Purchasing Coordinator, Rogers communicated that expectation to her, and Dangelo admittedly could not do the computer skills.  As such, her discrimination claim fails and Rogers need not be "put to the burden of stating the reasons for [her] termination."  *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997).  Similar to the Court in *Coco*, "[w]e do not

reach the pretext stage" because plaintiff has not satisfied the "legitimate expectations hurdle."  *Id.*

ADEA

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's age.  29 U.S.C. § 623(a)(1).  An employee must be at least 40 years of age to pursue an age discrimination claim.  29 U.S.C. § 631(a).  To succeed, "a plaintiff must show that her termination . . . would not have occurred but for her employer's motive to discriminate on the basis of her age."  *Horwitz v. Bd. of Ed. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001)(quotation omitted).

Unlawful discrimination may be proved through the direct method showing evidence of impermissible motive, or indirectly by the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). Under either method, a plaintiff must prove "that age was the 'but-for' cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009).

The Court will first address whether Dangelo has satisfied her burden of proof under the direct method.  Under the direct method route, Plaintiff must present "evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer;

18

and (3) a causal connection between the two." *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003) (citation omitted). Under the direct method, Dangelo may present direct or circumstantial evidence. Direct evidence essentially requires an admission by the decision maker that her actions were based upon discrimination. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Plaintiff can also seek to avert summary judgment by presenting enough circumstantial evidence to compose a "convincing mosaic" that allows a jury to infer intentional retaliation. *Volovsek v. Wisconsin Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 690 (7th Cir. 2003) (citation omitted).

Here, Dangelo has offered no evidence that amounts to an admission of discriminatory animus. The only circumstantial evidence offered is that sometime after she started working in the Supply Coordinator Position, Kozik asked her how old she was during a "casual conversation" and then said "well, you look marvelous darling[,] you would never know it," then added " I think this job is just too much for you." (Dangelo Dep., pp. 53-54.)[1] The first

---

[1]Dangelo also testified that the River Oaks store supervisor, Henry, made a humorous comment to the other sales employees that "you're letting this old lady beat you." (Dangelo Dep., p. 99.) However, there is no evidence that Henry played any role in the decision to terminate Dangelo's employment, and stray comments by non-decisionmakers are insufficient to raise an issue for trial. *See, e.g., DeLoach v. Infinity Broad.,* 164 F.3d 398, 403 (7th Cir. 1999); *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 730 (7th Cir. 2004) ("Generally speaking, comments by a non-decision maker do not suffice as evidence of discriminatory intent.").

part of this comment (you look marvelous) – seems like a compliment, if anything. The second part (the job is just too much for you) – may be related to the fact that Dangelo admittedly could not handle the computer aspects. Even if a fact finder interpreted this statement as some sort of age bias, there is no link between the statement (made by Kozik) and the ultimate decision to terminate Dangelo's employment (made by Reynolds). "Without a causal relation between [the statement] and [Reynolds' decision], this single piece of circumstantial evidence supporting [plaintiff's] case becomes irrelevant." *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 500 (7th Cir. 2009) (citing *Lust v. Sealy, Inc.*, 383 F.3d 580, 584 (7th Cir. 2004)).

When Kozik hired Dangelo just a few weeks before this comment was made, Dangelo was 57 years old at the time. (Dangelo Dep., p. 8.) An inference of nondiscrimination in an age discrimination case arises when the plaintiff is already over age 40 when hired, and the same person conducted the hiring and firing. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997) (quotation omitted) (noting "[i]t is highly doubtful that a person who hires an employee in a protected age group . . . would fire the same employee . . as a result of a sudden aversion to older people."). In this case, it was not Kozik that made the final decision to terminate Dangelo, but rather Reynolds (thus the inference is not strictly applicable). However, it still seems odd

that a company would employ Dangelo for approximately 3 years, then per her request, hire her in a new position, then suddenly fire her a few weeks later based on age discrimination.  Age has to be the "but for" reason for Dangelo's termination.  *Gross*, 129 S. Ct. at 2351; *see also Trahant v. Royal Indem. Co.*, 121 F.3d 1094, 1098 (7th Cir., 1997) (finding even though employer may have demonstrated age bias, including by asking the plaintiff how old he was, employer was nevertheless entitled to summary judgment on direct method theory because the evidence showed it would have fired plaintiff "no matter what his age").  Here, because Dangelo did not know how to perform the computer-related functions of the Supply Purchasing Coordinator Position, and declined an offer to return to a sales position, it cannot be said that age was the "but for" reason of her termination.

Viewing the facts in the light most favorable to Plaintiff, she has put forth no direct or circumstantial evidence from which a rational trier of fact could reasonably infer that Reynolds fired Dangelo because of her age.  As such, Plaintiff has failed to establish a prima facie case of age discrimination under the direct method.

As an alternative to the direct method of proof, Plaintiff may proceed under the *McDonnell Douglas* burden-shifting approach which sets forth a three-step inquiry.  First, Plaintiff has the burden of establishing a prima facie case of discrimination by

demonstrating that: "(1) she falls within the protected age group – that is, she is at least 40 years old; (2) she performed her job satisfactorily; (3) despite her satisfactory performance, she suffered a materially adverse employment action; and (4) younger employees situated similarly to the plaintiff were treated more favorably." *Horwitz*, 260 F.3d at 610. Additionally, in the wake of *Gross*, it is not enough to show that age was *a* motivating factor – Dangelo must show that, but for her age, the adverse action would not have occurred. *Gross*, 129 S.Ct. at 2351. If Dangelo establishes a prima facie case, the burden of production shifts to Rogers who must "articulate a legitimate, nondiscriminatory reason" for the discharge. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002). If Defendant makes this showing, the burden then shifts back to Plaintiff to show that Defendant's proffered reason is merely a pretext for discrimination. *Id.*

Here, as discussed earlier, Dangelo has failed to show that she performed her job satisfactorily. Additionally, even under this indirect method, there are no facts in the record to show that Dangelo was terminated because of her age. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507-09 (7th Cir. 2009) (affirming summary judgment for employer where plaintiff failed to establish that his age was the "but for" cause of his termination). Finally, even assuming, *arguendo*, that Dangelo could make out a prima facie case of age discrimination, there is nothing to establish that Rogers'

reasons for terminating her employment were not legitimate. Admittedly, Dangelo lacked the needed skills for the Supply Purchasing Coordinator Position, thus, Rogers has presented a legitimate reason for terminating her employment, and there is no evidence this reason was pretextual.

Title VII

Finally, summary judgment is also appropriate on Dangelo's Title VII race discrimination claim. Dangelo is Caucasian. She alleges in the complaint that it was discriminatory for her to be terminated, while an African American employee received the Receptionist position that Dangelo sought after the Supply Purchasing Coordinator position did not work out. As with her other claims of discrimination, there is simply no direct evidence to support such speculation.

Under the indirect method, Dangelo must show that she: (1) belongs to a protected class; (2) her performance met Rogers' legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly-situated others not in her protected class received more favorable treatment. *Fane v. Lock Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). In a reverse discrimination case, the first prong of the prima facie case is modified to require the plaintiff to "show background circumstances sufficient to demonstrate that the particular employer had reason

or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820 (7th Cir. 2006) (citations omitted) (internal quotations omitted).

Dangelo has not shown any circumstances demonstrating that Rogers had any reason to discriminate against Caucasians, she has not shown that she was meeting Rogers' legitimate expectations, and there is no evidence that she was treated less favorably than a similarly situated employee. Thomas had different qualifications – and proved that she could handle the Receptionist position and accompanying computer duties for the previous 6 months. Again, Dangelo has failed to satisfy a prima facie case of race discrimination. Even if she had, there is nothing pretextual about Rogers' determination to hire Thomas for the Receptionist position based upon her track record in the position for 6 months, and the fact that she possessed the necessary skills. Consequently, summary judgment is warranted on this claim as well.


CONCLUSION

For the reasons set forth above, the motion for a summary ruling (DE #21) is **GRANTED**. Additionally, the motion for summary judgment (DE #15) is **GRANTED**. The Clerk is hereby **ORDERED** to **DISMISS** the claims against Rogers Enterprises, Inc., d/b/a Rogers & Hollands Jewelers **WITH PREJUDICE** and to **CLOSE** this case.

24

DATED: May 4, 2011                    /s/ RUDY LOZANO, Judge
                                      United States District Court